# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | **CASE NO. 19-34372** |
| **MILANCO, LLC** | § | **CHAPTER 7** |
| | § | |
| **DEBTOR** | § | **JUDGE EDUARDO V. RODRIGUEZ** |

### TRUSTEE'S MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS AND CLAIMS PURSUANT TO 11 U.S.C. § 363(b) and (f); and PAY BROKER COMMISSIONS AT CLOSING

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

*Due to the cost of mailing, copies of the exhibits referred to herein are not included with the physical copy of this motion served on parties-in-interest. If you desire a copy of the exhibits, please email* mmyers@rossbanks.com *and an electronic copy will be provided.*

**To the Eduardo V. Rodriguez,**
**United States Bankruptcy Judge**:

COMES NOW Randy W. Williams, Trustee (the "Trustee") and would show as follows:

### A. Jurisdiction, Venue and Constitutional Authority

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and/or (N) and arises in and/or under Title 11. The statutory predicate for the relief sought herein is Federal Rule of Bankruptcy Procedure 9019.

2.  Venue is proper under 28 U.S.C. §§ 1408 and/or 1409.

3.  This Court has constitutional authority to enter a final order regarding this matter. This motion concerns essential bankruptcy matters which have no equivalent in state law thereby rendering the Supreme Court's opinion in *Stern v. Marshall* inapplicable. *See In re Carlew*, 469 B.R. 666, 672 (Bankr.

S.D. Tex. 2012) (discussing *Stern v. Marshall*, 131 S.Ct. 2594 (2011)).  In the alternative, all the matters addressed in this motion are essential bankruptcy matters which trigger the public rights exception.  *See Id.*

## B. Background

4.      On August 5, 2019 (the "***Petition Date***"), Milanco, LLC (the "***Debtor***") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  On or about the same date, the Trustee was appointed interim Trustee, and, having since accepted such appointment and posted the requisite bond, is now the duly qualified Chapter 7 Trustee of this bankruptcy estate.

5.      On the Petition Date, the Debtor owned the real property and improvements located at 12800 Briar Forest Drive #111A, Houston, Texas 77077 (the "***Property***").  The Property is purportedly encumbered by a mortgage in favor of FCI Lender Services, Inc., who has alleged that they are owed $95,165.46.  Approximately $6,750.00 in unpaid 2018 *ad valorem* property taxes are due to the Harris County Taxing Authorities is owed on the property, as well as a *pro rata* share of current year property taxes to the applicable taxing authorities.

6.      On October 4, 2019, the Trustee filed an application to employ BK Global Services Real Estate Services and RE/MAX Westside ("***Broker***"), to assist him with the marketing and sale of the Property [Docket Number 22], which is pending.  A copy of the proposed listing agreements are attached as **Exhibit A** and **B** (the "***Listing Agreement***").

7.      Since the filing of the application to employ, the Trustee received several proposed contracts for the purchase of the Property with the highest being from Fred Trotter ("***Buyer***") for the sum of $160,000.00.  See **Exhibit C** (the "***Sales Contract***").  The next higher offer received was for $141,000.00.

## C. Motion to Sell

8.      The Trustee proposes to sell the Property to Buyer for the sum of $160,000.00, subject to the terms and conditions set forth in the Sales Contract.  The Trustee believes the sales price to be fair and reasonable and in the best interests of the Estate and its creditors.  Moreover, the proposed sale represents the highest and best offer received for the Property after significant interest by numerous buyers.  The Trustee requests that at closing he be allowed to pay the outstanding mortgage, all outstanding property

taxes; broker commissions (as described below) and all usual and customary closing costs, which include, but are not limited to, survey costs/reimbursements; escrow fees, title commitment fees, fees for tax statements/certificates, fees for preparation of a deed, recording fees and delivery/filing charges.

9.      Although the Trustee is not aware of any liens against the Property not otherwise stated herein, out of an abundance of caution, he requests that the Property be sold free and clear of liens and claims pursuant to 11 U.S.C. § 363(f), with the same attaching to the proceeds of sale in the same order, priority and validity that existed on the Petition Date.

10.     The Trustee further requests authorization to pay Broker the 6% commission provided for in the Listing Agreement approved by the Employment Order, with that commission being split between Broker and Buyer's broker pursuant to the Sales Contract.  The Trustee posits that the commission proposed to be paid is well within the usual and customary range of broker's commissions paid on real property sales of the type involved herein.  The Trustee requests permission to pay these amounts at closing of the sale of the Property.

WHEREFORE based on the foregoing, the Trustee requests all relief sought herein and for such other and further relief to which he may show himself to be entitled.

Respectfully submitted,

*/s/ Marc Douglas Myers*

_____
Marc Douglas Myers
Ross, Banks, May, Cron & Cavin, P.C.
SBN 00797133
7700 San Felipe, Suite 550
Houston, Texas 77063
(713) 626-1200; (713) 623-6014 fax
mmyers@rossbanks.com
COUNSEL FOR THE TRUSTEE

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2019, a true and correct copy of the foregoing was sent via regular US mail to the Debtor(s), counsel for the Debtor(s), the Trustee, counsel for the Trustee, the US Trustee, all creditors and all persons requesting notice as set forth in the attached unless otherwise served by the CM-ECF system.

*/s/ Marc Douglas Myers*
_____
Marc Douglas Myers

Harris County Taxing Authorities
c/o Tara Grundemeier
P.O. Box 3064
Houston, Texas 77253

FCI Lender Services, Inc.
c/o Susan Fuertes
5550 Granite Parkway, Suite 245
Plano, TX 75024-4092

Milanco, LLC
16107 Kensington Drive, #121
Sugar Land, TX 77479-4224

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

Ross, Banks, May, Cron & Cavin, P.C.
7700 San Felipe, Suite 550
Houston, TX 77063-1618

FCI Lender Services, Inc.
PO Box 27370
Anaheim, CA 92809-0112

Tracey Midkiff, Attorney at Law
5550 Granite Parkway, Suite 245
Plano, TX 75024-4092

US Trustee
515 Rusk Ave., Ste 3516
Houston, TX 77002-2604

Randy W Williams
7924 Broadway, Suite 104
Pearland, TX 77581-7933

Timothy Webb
3401 Louisiana St., Ste 120
Houston, TX 77002-9546

**BK Global Real Estate Brokerage Listing Agreement**

This Real Estate Brokerage Listing Agreement ("Agreement") is between Randy Williams ("TRUSTEE") and **BK Global Real Estate Services LLC** ("BROKER")

**Authority to Sell Property: Trustee** gives **Broker** the right to be the EXCLUSIVE BROKER in the sale of the real and personal property (collectively "Property") described below:

12800 Briar Forest Drive #111A, Houston, Texas 77077

Upon full execution of a contract for sale and purchase of the Property and court approval, all rights and obligations of this Agreement will automatically extend through the date of the actual closing of the sales contract. **Trustee** and **Broker** acknowledge that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race, color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local law. **Trustee** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

**Price:** The starting listing price of the property will be**: $ To be determined**.  If there are no acceptable offers after 15 days, the list price will be reduced 5% and will reoccur every 15 days until the listing expires or if an acceptable offer is received.

**Brokers Obligations:** Broker will assist the Trustee to make commercially reasonable efforts to procure the consent and agreement of the senior mortgagee ("Secured Creditor"), if necessary due to a short sale or insufficiency of the net proceeds of sale, to:

procure a purchaser for the Real Property with the best qualified offer during a public sale.

a) Release its lien with respect to the Property; and

b) Agree to a 11 U.S.C. § 506 surcharge to (x) pay our fee and expenses, any commission payable to the local real estate broker and all other fees and expenses associated with the sale, and (y) provide a carve-out for the benefit of allowed unsecured creditors of the estate.

**Brokers Duties:** Broker duties will include but will not be limited to the following services;

- Researching the real estate, running title and lien searches to identify creditors for resolution and any title issues.
- Advising the trustee of any issues and discuss potential resolutions.
- Conducting the resolutions under the trustee's direction.
- Assisting the trustee in the collection of documents and information for employment.
- Making and identifying the correct contact with any secured creditors where applicable.
- Notifying the secured creditor of the upcoming sale and identifying servicer requirements.
- Assisting the trustee in establishing market value and negotiating with the Servicer an acceptable sales price and establishing a carve-out, if necessary.
- Development of online marketing, email campaign and full nationwide marketing services.
- Conducting an online sale.
- Use of the BK Global technology platform.
- Assist the trustee in the review of all offers and coordinate the final documentation of the offer accepted by the trustee.
- Managing contract requirements such as inspections, appraisals and HOA applications.
- Coordinating closings and assisting the trustee in the collection of required information for court filing.
- Closing the transaction and ensure the estate has received the appropriate funds.

**Local Listing Brokers Obligations: Broker** will select a **Local Listing Broker** to co-list the property and provide limited services. **Trustee** will retain both **Broker** and the **Local Listing Broker** to market the Property for sale to the public under a separate listing agreement.

**Local Listing Brokers Duties:** Local Listing Brokers duties will include but will not be limited to the following services;

- Inspecting the property and completing a broker's price opinion.
- Listing the property in the multiple listing service (MLS).
- Posting a for sale sign in the yard and coordinating showings.

**Trustee Obligations:** In consideration of **Broker's** obligations, **Trustee** agrees to:

a) Cooperate with **Broker** in carrying out the purpose of this Agreement
b) Assist the Broker as needed in obtaining the keys to the Property and make the Property available for **Broker** to show during reasonable times.
c) File all court motions and documents in a timely manner to ensure a successful sale.
d) Advise **Broker** of any special issues our court requirements.

**Compensation: 6% Real Estate Commission** will be paid out of the proceeds off the sale and is due and paid at closing. The commission will cover the costs of the **Broker**, **Local Listing Broker** and **Buyers Broker**. The commission will be paid as follows:

- 2% Broker
- 2% Local Listing Broker
- 2% Buyers Broker

**Term of Agreement:** The term of this Agreement will commence when signed by the **Trustee** and the court approves it.  This Agreement will automatically terminate upon the closing of the sale of the Property, or it may be terminated by either party for any or no reason after 180 days from commencement. In addition, this Agreement will be terminated if the **Trustee** files a Report of No Distribution, files a Notice of Abandonment of the subject property, or submits a Trustee's Final Report to the Office of the United States Trustee.

**Broker** acknowledges and agrees that (a) the **Trustee** is not executing this Agreement in an individual capacity, but solely as trustee of the estate, (b) **Broker** does not and will not have any right or claim with respect to the estate and (c) **Brokers** sole recourse for payment of real estate commission, fees and expenses will be paid at closing with court approval.

This Agreement constitutes our complete agreement on this matter and supersedes all prior agreements and representations concerning the same.  It may not be modified or amended except in a writing signed by both parties.

**(the remainder of this page is left intentionally blank)**

**The effective date of this agreement is _____.**

**<u>BROKER:</u>**

By:_____ Acknowledged and agreed as of the date set forth above.

   Patrick Butler, Broker-in-Charge

**<u>TRUSTEE:</u>**

_____ Acknowledged and agreed as of the date set forth above.

Randy Williams, not individually but solely as Trustee in the referenced matter.



# Information About Brokerage Services

*Texas law requires all real estate licensees to give the following information about brokerage services to prospective buyers, tenants, sellers and landlords.*

**TYPES OF REAL ESTATE LICENSE HOLDERS:**
- **A BROKER** is responsible for all brokerage activities, including acts performed by sales agents sponsored by the broker.
- **A SALES AGENT** must be sponsored by a broker and works with clients on behalf of the broker.

**A BROKER'S MINIMUM DUTIES REQUIRED BY LAW (A client is the person or party that the broker represents):**
- Put the interests of the client above all others, including the broker's own interests;
- Inform the client of any material information about the property or transaction received by the broker;
- Answer the client's questions and present any offer to or counter-offer from the client; and
- Treat all parties to a real estate transaction honestly and fairly.

**A LICENSE HOLDER CAN REPRESENT A PARTY IN A REAL ESTATE TRANSACTION:**

**AS AGENT FOR OWNER (SELLER/LANDLORD):** The broker becomes the property owner's agent through an agreement with the owner, usually in a written listing to sell or property management agreement. An owner's agent must perform the broker's minimum duties above and must inform the owner of any material information about the property or transaction known by the agent, including information disclosed to the agent or subagent by the buyer or buyer's agent.

**AS AGENT FOR BUYER/TENANT:** The broker becomes the buyer/tenant's agent by agreeing to represent the buyer, usually through a written representation agreement. A buyer's agent must perform the broker's minimum duties above and must inform the buyer of any material information about the property or transaction known by the agent, including information disclosed to the agent by the seller or seller's agent.

**AS AGENT FOR BOTH - INTERMEDIARY:** To act as an intermediary between the parties the broker must first obtain the written agreement of each party to the transaction. The written agreement must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. A broker who acts as an intermediary:
- Must treat all parties to the transaction impartially and fairly;
- May, with the parties' written consent, appoint a different license holder associated with the broker to each party (owner and buyer) to communicate with, provide opinions and advice to, and carry out the instructions of each party to the transaction.
- Must not, unless specifically authorized in writing to do so by the party, disclose:
  - that the owner will accept a price less than the written asking price;
  - that the buyer/tenant will pay a price greater than the price submitted in a written offer; and
  - any confidential information or any other information that a party specifically instructs the broker in writing not to disclose, unless required to do so by law.

**AS SUBAGENT:** A license holder acts as a subagent when aiding a buyer in a transaction without an agreement to represent the buyer. A subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first.

**TO AVOID DISPUTES, ALL AGREEMENTS BETWEEN YOU AND A BROKER SHOULD BE IN WRITING AND CLEARLY ESTABLISH:**
- The broker's duties and responsibilities to you, and your obligations under the representation agreement.
- Who will pay the broker for services provided to you, when payment will be made and how the payment will be calculated.

**LICENSE HOLDER CONTACT INFORMATION:** This notice is being provided for information purposes. It does not create an obligation for you to use the broker's services. Please acknowledge receipt of this notice below and retain a copy for your records.

| RE/MAX WESTSIDE | 254526 | | |
|---|---|---|---|
| Licensed Broker /Broker Firm Name or Primary Assumed Business Name | License No. | Email | Phone |
| HOUSTON SHELTER CORP. | | | |
| Designated Broker of Firm | License No. | Email | Phone |
| KEITH POLLACK | | | |
| Licensed Supervisor of Sales Agent/ Associate | License No. | Email | Phone |
| KEN LEWIS | 298673 | KENLEWIS100@HOTMAIL.COM | |
| Sales Agent/Associate's Name | License No. | Email | Phone |
| X Buyer/Tenant/Seller/Landlord Initials | | Date | |

**Regulated by the Texas Real Estate Commission**
TXR-2501

**Information available at www.trec.texas.gov**
IABS 1-0 Date

# ![](Texas Realtors logo) TEXAS REALTORS

## RESIDENTIAL REAL ESTATE LISTING AGREEMENT
## EXCLUSIVE RIGHT TO SELL

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2018

1. **PARTIES:** The parties to this agreement (this Listing) are:

   Seller: **RANDY W WILLIAMS, TRUSTEE** , and not individually

   Address: **7924 BROADWAY, SUITE 104**
   City, State, Zip: **PEARLAND, TX 77581**
   Phone: _____ Fax: _____
   E-Mail: _____

   Broker: **RE/MAX WESTSIDE**
   Address: **15119 Memorial Dr 100**
   City, State, Zip: **HOUSTON, TX  77079**
   Phone: **(281)236-9772** Fax: _____
   E-Mail: **KENLEWIS100@HOTMAIL.COM**

   Seller appoints Broker as Seller's sole and exclusive real estate agent and grants to Broker the exclusive right to sell the Property.

2. **PROPERTY:** "Property" means the land, improvements, and accessories described below, except for any described exclusions.

   A. <u>Land</u>: Lot **TR 111A** , Block **2** , **STONEHENGE**
      Addition, City of **HOUSTON** ,
      in **HARRIS** County, Texas known as **12800 BRIAR FOREST #111A   77077**
      _____ (address/zip code),
      or as described on attached exhibit. *(If Property is a condominium, attach Condominium Addendum.)*

   B. <u>Improvements</u>: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above-described real property.

   C. <u>Accessories</u>: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above-ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) satellite dish systems, (ii) garage doors, (iii) entry gates, and (iv) other improvements and accessories.

RE/MAX Westside REALTORS, 15119 Memorial Dr 100 Houston TX 77079                                    Phone: 281-925-3000        Fax: 281-925-4002        12800 Briar Forest
Ken Lewis                                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

D. Exclusions: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: _____
_____.

E. Owners' Association: The property ☒ is ☐ is not subject to mandatory membership in a property owners' association.

3. **LISTING PRICE:** Seller instructs Broker to market the Property at the following price: $ <mark>to be determined</mark> (Listing Price). Seller agrees to sell the Property for the Listing Price or any other price acceptable to Seller. Seller will pay all typical closing costs charged to sellers of residential real estate in Texas (seller's typical closing costs are those set forth in the residential contract forms promulgated by the Texas Real Estate Commission).

4. **TERM:**

A. This Listing begins on ___**September 25, 2019**___ and ends at 11:59 p.m. on ___**December 24, 2019**___ .

B. If Seller enters into a binding written contract to sell the Property before the date this Listing begins and the contract is binding on the date this Listing begins, this Listing will not commence and will be void.

5. **BROKER'S COMPENSATION:**

A. When earned and payable, Seller will pay Broker:

☒ (1) ___**6.000**___ % of the sales price.

☒ (2) <mark>all compensation is subject to bankruptcy court approval, subject to division with BK Global Services and any buyer's broker</mark>

B. Earned: Broker's compensation is earned when any one of the following occurs during this Listing:
(1) Seller sells, exchanges, options, agrees to sell, agrees to exchange, or agrees to option the Property to anyone at any price on any terms;
(2) ~~Broker individually or in cooperation with another broker procures a buyer ready, willing, and able to buy the Property at the Listing Price or at any other price acceptable to Seller;~~ or
(3) Seller breaches this Listing.

C. Payable: Once earned, Broker's compensation is payable either during this Listing or after it ends at the earlier of:
(1) the closing and funding of any sale or exchange of all or part of the Property;
(2) Seller's refusal to sell the Property after Broker's compensation has been earned;
(3) Seller's breach of this Listing; or
(4) at such time as otherwise set forth in this Listing.

Broker's compensation is not payable if a sale of the Property does not close or fund as a result of: (i) Seller's failure, without fault of Seller, to deliver to a buyer a deed or a title policy as required by the contract to sell; (ii) loss of ownership due to foreclosure or other legal proceeding; or (iii) Seller's failure to restore the Property, as a result of a casualty loss, to its previous condition by the closing date set forth in a contract for the sale of the Property.

D. Other Compensation:

(1) ~~Breach by Buyer Under a Contract:~~ If Seller collects earnest money, the sales price, or ~~damages by suit,~~ compromise, settlement, or otherwise ~~from a buyer who breaches a contract~~ for the sale of the Property ~~entered into during this Listing,~~ Seller will pay Broker, after deducting attorney's fees and ~~collection expenses,~~

~~an amount equal to the lesser of one-half of the amount collected after deductions or the amount of the Broker's Compensation stated in Paragraph 5A. Any amount paid under this Paragraph 5D(1) is in addition to any amount that Broker may be entitled to receive for subsequently selling the Property.~~

(2) ~~Service Providers: If Broker refers Seller or a prospective buyer to a service provider (for example, mover, cable company, telecommunications provider, utility, or contractor) Broker may receive a fee from the service provider for the referral. Any referral fee Broker receives under this Paragraph 5D(2) is in addition to any other compensation Broker may receive under this Listing.~~

(3) Other Fees and/or Reimbursable Expenses: _____
_____
_____.

E. Protection Period:

   (1) "Protection period" means that time starting the day after this Listing ends and continuing for **30** days. "Sell" means any transfer of any fee simple interest in the Property whether by oral or written agreement or option.

   (2) Not later than 10 days after this Listing ends, Broker may send Seller written notice specifying the names of persons whose attention was called to the Property during this Listing. If Seller agrees to sell the Property during the protection period to a person named in the notice or to a relative of a person named in the notice, Seller will pay Broker, upon the closing of the sale, the amount Broker would have been entitled to receive if this Listing were still in effect.

   (3) This Paragraph 5E survives termination of this Listing. This Paragraph 5E will not apply if:
       (a) Seller agrees to sell the Property during the protection period;
       (b) the Property is exclusively listed with another broker who is a member of Texas REALTORS® at the time the sale is negotiated; and
       (c) Seller is obligated to pay the other broker a fee for the sale.

F. County: All amounts payable to Broker are to be paid in cash in **HARRIS** _____ County, Texas.

G. Escrow Authorization: Seller authorizes, and Broker may so instruct, any escrow or closing agent authorized to close a transaction for the purchase or acquisition of the Property to collect and disburse to Broker all amounts payable to Broker under this Listing.

## 6. LISTING SERVICES:

A. Filing: Seller instructs Broker as follows: (Check 1 or 2 only.)

[X] (1) Broker will file this Listing with one or more Multiple Listing Services (MLS) according to the following: (Check only one box.)

   [X] (a) Broker will file this Listing with one or more Multiple Listing Services (MLS) by the earlier of the time required by MLS rules or 5 days after the date this Listing begins. Seller authorizes Broker to submit information about this Listing and the sale of the Property to the MLS.

   [X] (b) Seller instructs Broker not to file this Listing with one or more Multiple Listing Services (MLS) until ~~XXXX days after the date this Listing begins for the following purpose(s):~~ an application to employ broker is filed with the bankruptcy court;
   (Note: Do not check if prohibited by Multiple Listing Service(s).)

Notice: MLS rules require Broker to accurately and timely submit all information the MLS requires including final closing of sales and sales prices. MLS rules may require that the information be submitted to the MLS throughout the time the Listing is in effect. Subscribers to the MLS and appraisal districts may use the information for market evaluation or appraisal purposes. Subscribers are other brokers, agents, and real estate professionals such as appraisers. Any information filed with the MLS becomes the property of the MLS


Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    12800 Briar

for all purposes. **Submission of information to MLS ensures that persons who use and benefit from the MLS also contribute information.**

☐ (2) Broker will not file this Listing with any Multiple Listing Services (MLS) or other listing services.

**Notice: Seller acknowledges and understands that if this option is checked: (1) Seller's Property will not be included in the MLS database available to real estate agents and brokers from other real estate offices who subscribe to and participate in the MLS, and their buyer clients may not be aware that Seller's Property is offered for sale; (2) Seller's Property will not be included in the MLS's download to various real estate Internet sites that are used by the public to search for property listings; and (3) real estate agents, brokers, and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.**

B. <u>Listing Content</u>: If Broker files this Listing under Paragraph 6A(1)(a) or (b), the parties agree to the following:

(1) <u>Definitions</u>:
   (a) "Listing Content" means all photographs, images, graphics, video recordings, virtual tours, drawings, written descriptions, remarks, narratives, pricing information, and other copyrightable elements relating to the Property.
   (b) "Seller Listing Content" means Listing Content provided by Seller to Broker or Broker's associates.
   (c) "Broker Listing Content" means Listing Content that is otherwise obtained or produced by Broker or Broker's associates in connection with this Listing.

(2) Seller grants Broker a non-exclusive, irrevocable, worldwide, royalty-free license to use, sublicense through multiple tiers, publish, display, and reproduce the Seller Listing Content, to prepare derivative works of the Seller Listing Content, and to distribute the Seller Listing Content, including any derivative works of the Seller Listing Content. This Paragraph 6B(2) survives termination of this Listing.

(3) All Broker Listing Content is owned exclusively by Broker, and Seller has no right, title or interest in or to any Broker Listing Content.

(4) Seller understands and agrees that both the Seller Listing Content and Broker Listing Content, including any changes to such content, may be filed with the MLS, included in compilations of listings, and otherwise distributed, publicly displayed and reproduced.

**7. ACCESS TO THE PROPERTY:**

A. <u>Authorizing Access</u>: Authorizing access to the Property means giving permission to another person to enter the Property, disclosing to the other person any security codes necessary to enter the Property, and lending a key to the other person to enter the Property, directly or through a keybox. To facilitate the showing and sale of the Property, Seller instructs Broker to:
   (1) access the Property at reasonable times;
   (2) authorize other brokers, their associates, inspectors, appraisers, and contractors to access the Property at reasonable times; and
   (3) duplicate keys to facilitate convenient and efficient showings of the Property.

B. <u>Scheduling Companies</u>: Broker may engage the following companies to schedule appointments and to authorize others to access the Property: **CSS SHOWING SERVICES** _____ .

C. <u>Keybox</u>: **A keybox is a locked container placed on the Property that holds a key to the Property. A keybox makes it more convenient for brokers, their associates, inspectors, appraisers, and contractors to show, inspect, or repair the Property. The keybox is opened by a special combination, key, or programmed device so that authorized persons may enter the Property, even in Seller's absence. Using a keybox will probably increase the number of showings, but involves risks (for example, unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.**

(1) Broker ☒ is ☐ is not  authorized to place a keybox on the Property.

(2) If a tenant occupies the Property at any time during this Listing, Seller will furnish Broker a written statement (for example, TXR No. 1411), signed by all tenants, authorizing the use of a keybox or Broker may remove the keybox from the Property.

D. <u>Liability and Indemnification</u>: When authorizing access to the Property, Broker, other brokers, their associates, any keybox provider, or any scheduling company are not responsible for personal injury or property loss to Seller or any other person. Seller assumes all risk of any loss, damage, or injury. ~~Except for a loss caused by Broker, Seller will indemnify and hold Broker harmless from any claim for personal injury, property damage, or other loss.~~

8. **COOPERATION WITH OTHER BROKERS:** Broker will allow other brokers to show the Property to prospective buyers. Broker will offer to pay the other broker a fee as described below if the other broker procures a buyer that purchases the Property.

A. <u>MLS Participants</u>: If the other broker is a participant in the MLS in which this Listing is filed, Broker will offer to pay the other broker:
(1) if the other broker represents the buyer:   **2.000**   % of the sales price or $ _____ ; and
(2) if the other broker is a subagent:   **2.000**   % of the sales price or $ _____ .

B. <u>Non-MLS Brokers</u>: If the other broker is not a participant in the MLS in which this Listing is filed, Broker will offer to pay the other broker:
(1) if the other broker represents the buyer:   **2.000**   % of the sales price or $ _____ ; and
(2) if the other broker is a subagent:   **2.000**   % of the sales price or $ _____ .

9. **INTERMEDIARY:** *(Check A or B only.)*

☒ A. <u>Intermediary Status</u>: Broker may show the Property to interested prospective buyers who Broker represents. If a prospective buyer who Broker represents offers to buy the Property, Seller authorizes Broker to act as an intermediary and Broker will notify Seller that Broker will service the parties in accordance with one of the following alternatives.

(1) If a prospective buyer who Broker represents is serviced by an associate other than the associate servicing Seller under this Listing, Broker may notify Seller that Broker will: (a) appoint the associate then servicing Seller to communicate with, carry out instructions of, and provide opinions and advice during negotiations to Seller; and (b) appoint the associate then servicing the prospective buyer to the prospective buyer for the same purpose.

(2) If a prospective buyer who Broker represents is serviced by the same associate who is servicing Seller, Broker may notify Seller that Broker will: (a) appoint another associate to communicate with, carry out instructions of, and provide opinions and advice during negotiations to the prospective buyer; and (b) appoint the associate servicing the Seller under this Listing to the Seller for the same purpose.

(3) Broker may notify Seller that Broker will make no appointments as described under this Paragraph 9A and, in such an event, the associate servicing the parties will act solely as Broker's intermediary representative, who may facilitate the transaction but will not render opinions or advice during negotiations to either party.



☐ B. **No Intermediary Status:** Seller agrees that Broker will not show the Property to prospective buyers who Broker represents.

**Notice:** **If Broker acts as an intermediary under Paragraph 9A, Broker and Broker's associates:**
   ◆ **may not disclose to the prospective buyer that Seller will accept a price less than the asking price unless otherwise instructed in a separate writing by Seller;**
   ◆ **may not disclose to Seller that the prospective buyer will pay a price greater than the price submitted in a written offer to Seller unless otherwise instructed in a separate writing by the prospective buyer;**
   ◆ **may not disclose any confidential information or any information Seller or the prospective buyer specifically instructs Broker in writing not to disclose unless otherwise instructed in a separate writing by the respective party or required to disclose the information by the Real Estate License Act or a court order or if the information materially relates to the condition of the property;**
   ◆ **may not treat a party to the transaction dishonestly; and**
   ◆ **may not violate the Real Estate License Act.**

**10. CONFIDENTIAL INFORMATION:** During this Listing or after it ends, Broker may not knowingly disclose information obtained in confidence from Seller except as authorized by Seller or required by law. Broker may not disclose to Seller any confidential information regarding any other person Broker represents or previously represented except as required by law.

**11. BROKER'S AUTHORITY:**

A. Broker will use reasonable efforts and act diligently to market the Property for sale, procure a buyer, and negotiate the sale of the Property.

B. Broker is authorized to display this Listing on the Internet without limitation unless one of the following is checked:

   ☐ (1) Seller does not want this Listing to be displayed on the Internet.
   ☐ (2) Seller does not want the address of the Property to be displayed on the Internet.

   <u>Notice</u>: Seller understands and acknowledges that, if box 11B(1) is selected, consumers who conduct searches for listings on the Internet will not see information about this Listing in response to their search.

C. Broker is authorized to market the Property with the following financing options:

   ☒ (1) Conventional          ☐ (5) Texas Veterans Land Program
   ☐ (2) VA                    ☐ (6) Owner Financing
   ☐ (3) FHA                   ☐ (7) Other
   ☒ (4) Cash

D. In addition to other authority granted by this Listing, Broker may:
   (1) advertise the Property by means and methods as Broker determines, including but not limited to creating and placing advertisements with interior and exterior photographic and audio-visual images of the Property and related information in any media and the Internet;
   (2) place a "For Sale" sign on the Property and remove all other signs offering the Property for sale or lease;
   (3) furnish comparative marketing and sales information about other properties to prospective buyers;
   (4) disseminate information about the Property to other brokers and to prospective buyers, including applicable disclosures or notices that Seller is required to make under law or a contract;
   (5) obtain information from any holder of a note secured by a lien on the Property;


Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      **12800 Briar**

(6)  accept and deposit earnest money in trust in accordance with a contract for the sale of the Property;

(7)  disclose the sales price and terms of sale to other brokers, appraisers, or other real estate professionals;

(8)  in response to inquiries from prospective buyers and other brokers, disclose whether the Seller is considering more than one offer (Broker will not disclose the terms of any competing offer unless specifically instructed by Seller);

(9)  advertise, during or after this Listing ends, that Broker "sold" the Property; and

(10) place information about this Listing, the Property, and a transaction for the Property on an electronic transaction platform (typically an Internet-based system where professionals related to the transaction such as title companies, lenders, and others may receive, view, and input information).

E.  Broker is not authorized to execute any document in the name of or on behalf of Seller concerning the Property.

**12. SELLER'S REPRESENTATIONS:** Except as provided by Paragraph 15, Seller represents that:

A.  Seller has ~~fee simple title to and peaceable possession of the Property and all its improvements and fixtures, unless rented, and the~~ legal capacity to convey the Property;

B.  Seller is not bound by a listing agreement with another broker for the sale, exchange, or lease of the Property that is or will be in effect during this Listing;

C.  ~~any pool or spa and any required enclosures, fences, gates, and latches comply with all applicable laws and ordinances;~~

D.  no person or entity has any right to purchase, lease, or acquire the Property by an option, right of refusal, or other agreement;

E.  ~~Seller is current and not delinquent on all loans and all other financial obligations related to the Property, including but not limited to mortgages, home equity loans, home improvement loans, homeowner association fees, and taxes, except~~ _____;

F.  Seller is not aware of any liens or other encumbrances against the Property, except _____;
      as otherwise disclosed in any documents filed in Case No. 19-34372, In re Milanco, LLC, US BK Court ;

G.  the Property is not subject to the jurisdiction of any court;

H.  all information relating to the Property Seller provides to Broker is true and correct to the best of Seller's knowledge; and

I.  the name of any employer, relocation company, or other entity that provides benefits to Seller when selling the Property is: _____; and

J.  the Seller Listing Content, and the license granted to Broker for the Seller Listing Content, do not violate or infringe upon the rights, including any copyright rights, of any person or entity.

**13. SELLER'S ADDITIONAL PROMISES:** Seller agrees to:

A.  cooperate with Broker to facilitate the showing, marketing, and sale of the Property;

B.  not rent or lease the Property during this Listing without Broker's prior written approval;

C.  not negotiate with any prospective buyer who may contact Seller directly, but refer all prospective buyers to Broker;

D.  not enter into a listing agreement with another broker for the sale, exchange, lease, or management of the Property to become effective during this Listing without Broker's prior written approval;

E.  ~~maintain any pool and all required enclosures in compliance with all applicable laws and ordinances;~~

F.  provide Broker with copies of any leases or rental agreements pertaining to the Property and advise Broker of tenants moving in or out of the Property;

G.  ~~complete any disclosures or notices required by law or a contract to sell the Property; and~~

H.  ~~amend any applicable notices and disclosures if any material change occurs during this Listing.~~


Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      **12800 Briar**

## 14. LIMITATION OF LIABILITY:

A. ~~If the Property is or becomes vacant during this Listing, Seller must notify Seller's casualty insurance company and request a "vacancy clause" to cover the Property.~~ Broker is not responsible for the security of the Property nor for inspecting the Property on any periodic basis.

B. **Broker is not responsible or liable in any manner for personal injury to any person or for loss or damage to any person's real or personal property resulting from any act or omission not caused by Broker's negligence, including but not limited to injuries or damages caused by:**
   (1) **other brokers, their associates, inspectors, appraisers, and contractors who are authorized to access the Property;**
   (2) **other brokers or their associates who may have information about the Property on their websites;**
   (3) **acts of third parties (for example, vandalism or theft);**
   (4) **freezing water pipes;**
   (5) **a dangerous condition on the Property;**
   (6) **the Property's non-compliance with any law or ordinance; or**
   (7) **Seller, negligently or otherwise.**

C. ~~Seller agrees to protect, defend, indemnify, and hold Broker harmless from any damage, costs, attorney's fees, and expenses that:~~
   (1) ~~are caused by Seller, negligently or otherwise;~~
   (2) ~~arise from Seller's failure to disclose any material or relevant information about the Property; or~~
   (3) ~~are caused by Seller giving incorrect information to any person.~~

## 15. SPECIAL PROVISIONS:

This agreement, and the sale of the real property described herein, is subject to Bankruptcy Court approval

Any disputes regarding this agreement are subject to the exclusive jurisdiction of the Bankruptcy Court.

16. **DEFAULT:** If Seller breaches this Listing, Seller is in default *and Broker may terminate this agreement as its sole remedy* ~~and will be liable to Broker for the amount of the Broker's compensation specified in Paragraph 5A and any other compensation Broker is entitled to receive under this Listing. If a sales price is not determinable in the event of an exchange or breach of this Listing, the Listing Price will be the sales price for purposes of computing compensation.~~ If Broker breaches this Listing, Broker is in default and Seller may exercise any remedy at law.

17. **MEDIATION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this Listing that may arise between the parties. If the dispute cannot be resolved by negotiation, the dispute will be submitted to mediation. The parties to the dispute will choose a mutually acceptable mediator and will share the cost of mediation equally.

18. **ATTORNEY'S FEES:** If Seller or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this Listing or any transaction related to or contemplated by this Listing, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

19. **ADDENDA AND OTHER DOCUMENTS:** Addenda that are part of this Listing and other documents that Seller may need to provide are:
   [X] A. Information About Brokerage Services;
   [ ] B. Seller Disclosure Notice (§5.008, Texas Property Code);

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          12800 Briar

☐ C. Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (required if Property was built before 1978);
☐ D. Residential Real Property Affidavit (T-47 Affidavit; related to existing survey);
☐ E. MUD, Water District, or Statutory Tax District Disclosure Notice (Chapter 49, Texas Water Code);
☐ F. Request for Information from an Owners' Association;
☐ G. Request for Mortgage Information;
☐ H. Information about Mineral Clauses in Contract Forms;
☐ I. Information about On-Site Sewer Facility;
☐ J. Information about Property Insurance for a Buyer or Seller;
☐ K. Information about Special Flood Hazard Areas;
☐ L. Condominium Addendum to Listing;
☐ M. Keybox Authorization by Tenant;
☐ N. Seller's Authorization to Release and Advertise Certain Information; and
☐ O. _____.

## 20. AGREEMENT OF PARTIES:

A. Entire Agreement: This Listing is the entire agreement of the parties and may not be changed except by written agreement.

B. Assignability: Neither party may assign this Listing without the written consent of the other party.

C. Binding Effect: Seller's obligation to pay Broker an earned compensation is binding upon Seller and Seller's heirs, administrators, executors, successors, and permitted assignees.

D. Joint and Several: All Sellers executing this Listing are jointly and severally liable for the performance of all its terms.

E. Governing Law: Texas law governs the interpretation, validity, performance, and enforcement of this Listing, to the extent that Federal Law does not pre-empt the same.

F. Severability: If a court finds any clause in this Listing invalid or unenforceable, the remainder of this Listing will not be affected and all other provisions of this Listing will remain valid and enforceable.

G. Notices: Notices between the parties must be in writing and are effective when sent to the receiving party's address, fax, or e-mail address specified in Paragraph 1.

## 21. ADDITIONAL NOTICES:

A. **Broker's compensation or the sharing of compensation between brokers is not fixed, controlled, recommended, suggested, or maintained by the Association of REALTORS®, MLS, or any listing service.**

B. **In accordance with fair housing laws and the National Association of REALTORS® Code of Ethics, Broker's services must be provided and the Property must be shown and made available to all persons without regard to race, color, religion, national origin, sex, disability, familial status, sexual orientation, or gender identity. Local ordinances may provide for additional protected classes (for example, creed, status as a student, marital status, or age).**

C. **Broker advises Seller to contact any mortgage lender or other lien holder to obtain information regarding payoff amounts for any existing mortgages or liens on the Property.**

D. **Broker advises Seller to review the information Broker submits to an MLS or other listing service.**

E. Broker advises Seller to remove or secure jewelry, prescription drugs, other valuables, firearms and any other weapons.

F. Broker advises Seller to consult an attorney before using any type of surveillance device in the Property to record or otherwise monitor prospective buyers without their knowledge or consent. Seller should be aware that a prospective buyer might photograph or otherwise record the Property without Seller's knowledge or consent.

G. Statutes or ordinances may regulate certain items on the Property (for example, swimming pools and septic systems). Non-compliance with the statutes or ordinances may delay a transaction and may result in fines, penalties, and liability to Seller.

H. If the Property was built before 1978, Federal law requires the Seller to: (1) provide the buyer with the federally approved pamphlet on lead poisoning prevention; (2) disclose the presence of any known lead-based paint or lead-based paint hazards in the Property; (3) deliver all records and reports to the buyer related to such paint or hazards; and (4) provide the buyer a period up to 10 days to have the Property inspected for such paint or hazards.

I. If Seller is a "foreign person" as defined by federal law, a buyer may be required to withhold certain amounts from the sales proceeds and deliver the same to the Internal Revenue Service to comply with applicable tax law. A "foreign person" is a: (1) nonresident alien individual; (2) foreign corporation that has not made an election under section 897(i) of the Internal Revenue Code to be treated as a domestic corporation; or (3) foreign partnership, trust, or estate. The definition does not include a resident alien individual. Seller notifies Broker that Seller ☐ is ☒ is not a "foreign person" as defined by federal law. If Seller is unsure whether Seller qualifies as a "foreign person" under federal law, Broker advises Seller to consult a tax professional or an attorney.

J. Broker advises Seller to refrain from transmitting personal information, such as bank account numbers or other financial information, via unsecured email or other electronic communication to reduce risk of wire fraud.

K. Broker cannot give legal advice. READ THIS LISTING CAREFULLY. If you do not understand the effect of this Listing, consult an attorney BEFORE signing.

| | |
|---|---|
| RE/MAX WESTSIDE | RANDY W WILLIAMS, TRUSTEE , *not individually* |
| Broker's Printed Name          254526  License No. | Seller's Printed Name |
| _Ken Li_          9-25-19 | |
| ☐ Broker's Signature          Date | Seller's Signature          Date |
| ☒ Broker's Associate's Signature, as an authorized agent of Broker | |
| KEN LEWIS | Seller's Printed Name |
| Broker's Associate's Printed Name, if applicable | |
| | Seller's Signature          Date |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          12800 Briar

# SURVEY DISCLOSURE

## (To be used only with REMAX Westside clients & customers)

Property Address: **12800 Briar Forest Dr, HOUSTON, TX  77077-2245** ("Property")

Buyer or Seller: **JAMIE S VINNELS & TALOR VINNELS**

Re/Max Westside Realtors ("Firm").

There are professional services that typically are performed in connection with the purchase and sale of real estate. Buyer or Seller understands that Firm does not give advice in certain matters that may relate to the purchase or sale of the Property, including but not limited to matters of law, taxation, financing, surveying, wood-destroying insect infestation, structural soundness or engineering.

Situations arise all too often that could have been avoided if a buyer had obtained a new survey from a surveyor.  It is expected that a survey will normally reveal such things as encroachments on the Property from adjacent properties (fences, driveways, etc.); encroachments from the Property onto adjacent properties; road or utility easements crossing the Property among other things.  Thus, an old survey, one that is not current or not done in conjunction with the sale of the Property, may not present accurate information concerning the Property. Therefore, the Firm recommends that Buyer or Seller obtain a new survey prepared purposely for the sale of the Property.  Otherwise, using a pre-existing survey or a T-47 Residential Real Property Affidavit may not reveal current conditions at the Property.

Buyer and Seller affirm that this Survey Disclosure has been thorough in its purpose of recommending that a new survey be obtained in connection with the sale of the Property.  The Buyer or Seller who chooses not to obtain a new survey does so at their own risk and against the recommendations of the Firm.

IN THE EVENT BUYER OR SELLER PROCEED WITH THE PURCHASE OR SALE USING A PRE-EXISTING SURVEY, BUYER OR SELLER SHALL INDEMNIFY, HOLD HARMLESS AND DEFEND FIRM AND ITS AGENTS FROM AND AGAINST ANY AND ALL CLAIMS, LIABILITY, DAMAGES, COSTS, AND EXPENSES, INCLUDING BUT NOT LIMITED TO REASONABLE ATTORNEYS' FEES, THAT MAY ARISE IN FAVOR OF BUYER OR SELLER OR ANY THIRD PARTY AGAINST FIRM OR INCURRED BY FIRM IN RELATION TO ANY SURVEY ISSUE FOR THE PROPERTY.

| | |
|---|---|
| _____ | _____ |
| Buyer | Seller |
| | **RANDY W WILLIAMS, TRUSTEE** |
| _____ | _____ |
| Buyer | Seller |
| _____ | _____ |
| Date | Date |

SURVEY DISCLOSURE

# Broker Notice to Seller
# Re/Max Westside, REALTORS®

Sellers: **RANDY W WILLIAMS, TRUSTEE**

Address:
**12800 Briar Forest Dr**
**HOUSTON, TX  77077-2245**

The Seller's Disclosure Notice is one of the most important documents you will sign in the entire process of selling your property. The purpose of the form is to keep all of us from being sued under the Texas Deceptive Trade Practices Act. The strongest consumer protection law in the nation, the DPTA carries a penalty of triple damages plus court costs and attorneys' fees to a Seller who fails to reveal a defect or problem to a Buyer. You can only be sued for what you fail to disclose, NOT for what you reveal, so it's in your best interest to be very open and honest.

You should include on the form anything you know that's wrong with your property, even if it's plainly visible. Did your pipes ever freeze? Have you ever had any water get into your house or garage? Any fires? Ever fall through your ceiling? Do tree roots periodically get into your sewer lines? Have you had a recurring problem, even a minor one? Have you had your house/garage/fence treated for termites or other wood destroying insects? Have you ever had a prior insurance claim or lawsuit involving the home? Did you fix cracks in the walls or brick veneer? Search your memory for things that may have happened some time ago. If you tell your Buyer in advance everything is usually okay. But if your Buyer finds out about something from his inspector, contractor, neighbor, insurance agent or the postal carrier-then you might be in trouble somewhere down the line. THERE IS A TWO-YEAR STATUTE OF LIMITATIONS FROM THE TIME THE 'DEFECT' IS DISCOVERED! Remember those triple damages....on a $100,000 home or damages you could end up being sued for over $300,000 plus attorneys' fees and court costs plus years of litigation!

The form is designed for all property throughout Texas (ranch houses, condos, city dwellings, etc.), so some of the questions may not pertain to your property. Read the instructions carefully, and then fill out the form carefully and completely. Every blank should contain a "Y" for yes, or a "N" for no, or a "U" for unsure or unknown. If there are not questions that specifically ask of something you need to disclose, write it somewhere on the document. Use additional sheets of paper, which you sign and date, if you need additional space for explanations. Buyers can reject a Disclosure that is incompletely or improperly filled out. In your explanations, choose your words with care. You're NOT required to scare your buyer away! There is honest debate about whether you have to include things that have been repaired and are no longer a problem. *Also please remember, your agent cannot assist you with completing this form, so please don't ask them. This is a disclosure from you to your buyer.* __Use this test: if you were buying a property and you'd want to know it, disclose it.__

_____   date        _____   date
Seller                                                   Seller
**RANDY W WILLIAMS, TRUSTEE**



# ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)

NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** The parties to this contract are   **RANDY W WILLIAMS, TRUSTEE, AND NOT INDIVIDUALLY**
(Seller) and                                    **FRED TROTTER**                               (Buyer).
Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** The land, improvements and accessories are collectively referred to as the "Property".
   A. LAND: Lot **TR 111A** Block **2**, **STONEHENGE** Addition, City of **HOUSTON**, County of **HARRIS**, Texas, known as **12800 Briar Forest Dr** **77077-2245** (address/zip code), or as described on attached exhibit.
   B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items,** if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.
   C. ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories.
   D. EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: _____
   _____
   E. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ............................. $ **160,000.00**
   B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum,
      ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum ................. $ _____
   C. Sales Price (Sum of A and B) ....................................................... $ **160,000.00**

4. **LICENSE HOLDER DISCLOSURE:** Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as a trustee or of which the license holder or the license holder's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: _____
   _____

5. **EARNEST MONEY:** Within 3 days after the Effective Date, Buyer must deliver $ **2,500.00** as earnest money to **ALAMO TITLE**, as escrow agent, at **1800 BERING** (address). Buyer shall deliver additional earnest money of $ _____ to escrow agent within _____ days after the Effective Date of this contract. If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money. If the last day to deliver the earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. **Time is of the essence for this paragraph.**

6. **TITLE POLICY AND SURVEY:**
   A. TITLE POLICY: Seller shall furnish to Buyer at ☒ Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by **ALAMO TITLE** (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
      (1) Restrictive covenants common to the platted subdivision in which the Property is located.
      (2) The standard printed exception for standby fees, taxes and assessments.

TXR 1601     Initialed for identification by Buyer **FT** _____ and Seller _____     TREC NO. 20-14

RWW

RE/MAX Westside REALTORS, 15119 Memorial Dr Ste 100 Houston TX 77079          Phone: 281-925-3000          Fax: 281-925-4002          12800 Briar Forest
Ken Lewis                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

    (3) Liens created as part of the financing described in Paragraph 3.

    (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.

    (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

    (6) The standard printed exception as to marital rights.

    (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.

    (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:

        [X] (i) will not be amended or deleted from the title policy; or

        [ ] (ii) will be amended to read, "shortages in area" at the expense of [ ] Buyer [ ] Seller.

    (9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)

    [ ] (1) Within _____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at [ ] Seller's [ ] Buyer's expense no later than 3 days prior to Closing Date.

    [ ] (2) Within _____ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

    [ ] (3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (9) above; or which prohibit the following use or activity: _____ Buyer must object the earlier of (i) the Closing Date or (ii) _____ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E. TITLE NOTICES:

    (1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

    (2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property [X] is [ ] is not

RWW

subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, or operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.**

Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.

**If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.**

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee

obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.
   (9)  PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.
  (10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

**7.  PROPERTY CONDITION:**
  A.  ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.
  B.  SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):
    (Check one box only)
    ☐ (1) Buyer has received the Notice.
    ☐ (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
    ☒ (3) The Seller is not required to furnish the notice under the Texas Property Code.
  C.  SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.
  D.  ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
    (Check one box only)
    ☒ (1) Buyer accepts the Property As Is.
    ☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____
    _____
    (Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)
  E.  LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.
  F.  COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.
  G.  ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ _____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements. <span style="color:red">See special provisions</span>

9. **CLOSING:**
   A. The closing of the sale will be on or before _____<span style="color:red">October 30 XXXXXXXX 201X</span>_____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.  <span style="color:orange">RWW</span>

   B. At closing: <span style="color:red">special</span>
      (1) Seller shall execute and deliver a <span style="color:red">general</span> warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property. <span style="color:orange">RWW</span>
      (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
      (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
      (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
      (5) If the Property is subject to a residential lease, Seller shall transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has acquired the Property and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

10. **POSSESSION:**
    A. Buyer's Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☐ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**
    B. Leases:
       (1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.
       (2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

11. **SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holder from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)

<span style="color:red">This contract is subject to BK court approval; all disputes hereunder are subject to the exclusive jurisdiction of the US Bankruptcy Court; Federal law controls interpretation of this agreement; not post-closing adjustment of taxes paid/pro-rated at closing; closing will be within 5 business days after the order approving the sale of the Property becomes final and non-appealable</span> <span style="color:orange">RWW</span>

12. **SETTLEMENT AND OTHER EXPENSES:**
    A. The following expenses must be paid at or prior to closing: <span style="color:red">unless otherwise provided for in the Bankruptcy Court Order approving sale provided for herein</span> <span style="color:orange">RWW</span>
       (1) Expenses payable by Seller (Seller's Expenses):
          (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
          (b) Seller shall also pay an amount not to exceed $ _____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.

Contract Concerning       **12800 Briar Forest Dr**
**HOUSTON, TX 77077-2245**      Page 6 of 10     2-12-18
(Address of Property)

(2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. ~~If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.~~

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer ~~(b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary~~ or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if any, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may ~~(a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b)~~ terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may ~~(a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b)~~ terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** ~~It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.~~

**17. ATTORNEY'S FEES:** ~~A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.~~

**18. ESCROW:**

A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.    *provided for in this contract*

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. ~~If no closing occurs, escrow agent may (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.~~

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    **12800 Briar**

provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: ~~Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.~~

E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| To Buyer | | To Seller | |
|---|---|---|---|
| at: | **1242 HEATHWOOD** | at: | c/o Marc D. Myers, Attorney at Law |
| **HOUSTON, TX 77077** | | | 7700 San Felipe, #550, Houston, TX 77063 |
| Phone: | **(832)646-8850** | Phone: | 713-626-1200 |
| Fax: | | Fax: | |
| E-mail: | **FREDTROTTER@GMAIL.COM** | E-mail: | mmyers@rossbanks.com |

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

☐ Third Party Financing Addendum

☐ Seller Financing Addendum

☒ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for Reservation of Oil, Gas and Other Minerals

☐ Addendum for "Back-Up" Contract

☐ Addendum for Coastal Area Property

☐ Addendum for Authorizing Hydrostatic Testing

☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☐ Addendum for Property in a Propane Gas System Service Area

☐ Other (list): _____
_____
_____
_____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com         12800 Briar

23. **TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ 100.00 (Option Fee) within 3 days after the Effective Date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within **10** days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☒ will ☐ will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

24. **CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's
Attorney is: _____

Seller's
Attorney is: see notice section above
_____

Phone: _____          Phone: _____

Fax: _____          Fax: _____

E-mail: _____          E-mail: _____

---

**EXECUTED the _____ day of _____, _____ (Effective Date).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

---

*FRED TROTTER*          10/17/2018 11:13 PM GMT          **RANDY W WILLIAMS TRUSTEE**
Buyer **FRED TROTTER**                    Seller **RANDY W WILLIAMS, TRUSTEE, AND NOT INDIVIDUALLY**

_____          _____
Buyer                         Seller



The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-14. This form replaces TREC NO. 20-13.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com          **12800 Briar**

## BROKER INFORMATION
(Print name(s) only. Do not sign)

| | |
|---|---|
| | **RE/MAX WESTSIDE**                    **254526** |
| Other Broker Firm                    License No. | Listing Broker Firm                    License No. |
| represents ☐ Buyer only as Buyer's agent | represents ☒ Seller and Buyer as an intermediary |
| ☐ Seller as Listing Broker's subagent | ☐ Seller only as Seller's agent |
| | **KEN LEWIS**                        **298673** |
| Associate's Name                    License No. | Listing Associate's Name            License No. |
| | **KENLEWIS100@HOTMAIL.COM**   **(281)236-9772** |
| Associate's Email Address            Phone | Listing Associate's Email Address        Phone |
| | **KEITH POLLACK** |
| Licensed Supervisor of Associate        License No. | Licensed Supervisor of Listing Associate    License No. |
| | **15119 MEMORIAL DR 100**     **(281)925-3000** |
| Other Broker's Address                Phone | Listing Broker's Office Address        Phone |
| | **HOUSTON**            **TX**        **77079** |
| City            State        Zip | City                State            Zip |
| | **keith Pollack** |
| | Selling Associate's Name            License No. |
| | **kpollack @remax.net** |
| | Selling Associate's Email Address        Phone |
| | Licensed Supervisor of Selling Associate    License No. |
| | **15119 MEMORIAL DR 100** |
| | Selling Associate's Office Address |
| | **HOUSTON**            **TX**        **77079** |
| | City                State            Zip |

Listing Broker has agreed to pay Other Broker _____ of the total sales price when the Listing Broker's fee is received. Escrow agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

TXR 1601                                    TREC NO. 20-14

**OPTION FEE RECEIPT**

Receipt of $_____ (Option Fee) in the form of _____
is acknowledged.

_____          _____
Seller or Listing Broker                                                              Date

**EARNEST MONEY RECEIPT**

Receipt of $_____ Earnest Money in the form of _____
is acknowledged.

_____          _____
Escrow Agent                          Received by          Email Address                    Date/Time

_____          _____
Address                                                                                   Phone

_____          _____
City                          State                    Zip                                              Fax

**CONTRACT RECEIPT**

Receipt of the Contract is acknowledged.

_____          _____
Escrow Agent                          Received by          Email Address                    Date

_____          _____
Address                                                                                   Phone

_____          _____
City                          State                    Zip                                              Fax

**ADDITIONAL EARNEST MONEY RECEIPT**

Receipt of $_____ additional Earnest Money in the form of _____
is acknowledged.

_____          _____
Escrow Agent                          Received by          Email Address                    Date/Time

_____          _____
Address                                                                                   Phone

_____          _____
City                          State                    Zip                                              Fax

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          12800 Briar